## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTIAN D. FOW, | : | 1:12-cv-1970 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| FRANK PAWLOWSKI, *et. al.*, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM**

### **December 16, 2016**

Presently before the Court is the Defendants' Motion for Summary Judgment. (the "Motion") (Doc. 64). Plaintiff Christian Fow ("Fow") filed a Complaint (Doc. 1) on October 1, 2012, an Amended Complaint on October 15, 2012 (Doc. 4), and a Second Amended Complaint on December 21, 2012. (Doc. 10). Following a motion for judgment on the pleadings (Doc. 18), Fow filed a Third Amended Complaint (Doc. 26), which remains the operative complaint in this matter. Fow asserts claims arising out of his employment with the Pennsylvania State Police against Frank Pawlowski ("Pawlowski"), Frank Noonan ("Noonan"), George Bivens ("Bivens"), Lisa Christie, William Horgas ("Horgas"), Barbara Christie, Wade Lauer ("Lauer"), Randy Kane ("Kane"), James Grove ("Grove"), Ronald Leidigh ("Leidigh"), Richard Achey ("Achey"), Maynard Gray ("Gray"), James Adams ("Adams"), Anthony Forray ("Forray") and Daniel

Hasenhauer ("Hasenhauer"). (collectively "Defendants"). The Defendants filed the instant Motion on June 1, 2016, moving for summary judgment in favor of all defendants on all counts. (Doc. 64). The Motion has been fully briefed (Docs. 67, 79, 86) and is therefore ripe for our review. For the reasons that follow, the Motion shall be granted and judgment entered in favor of Defendants on all counts.

## I.  BACKGROUND

Plaintiff Christian Fow was a Corporal with the Pennsylvania State Police Department ("PSP"), where he worked for seventeen years before his retirement on June 6, 2015. (Doc. 65 ¶ 17). Fow was a Patrol Section supervisor at the PSP Chambersburg station. (*Id*., at ¶ 19). In 2010, Fow was one of two Union Representatives for the Chambersburg station. (*Id*., at ¶¶23-24).

Defendant Pawlowski was the Commissioner of the PSP from August 2008 until January 2011. (*Id*., at ¶ 2). Defendant Noonan was the Commissioner of the PSP from April 2011 until January 2015. (*Id*., at ¶ 3). Defendant Bivens was the PSP Deputy Commissioner of Operations from January 2011 until January 2016. (*Id*., at ¶ 4). Defendant Lisa Christie was the PSP Disciplinary Officer from May 2010 until May 2012, and now serves as Lieutenant Colonel. (*Id*., at ¶ 5). Defendant Horgas was the commanding officer of Troop H in September 2010, and is now serving as acting Deputy Commissioner. (*Id*., at ¶ 6). Defendant Gray was the commanding officer for Troop H from September 2011 until sometime in

2012. (*Id.*, at ¶ 7). Defendant Lauer was the commanding officer of the Chambersburg station in September 2010. (*Id.*, at ¶ 8). Defendants Kane and Grove were Patrol Section supervisors for the Chambersburg station in September 2010. (*Id.*, at ¶¶ 9-10). Defendant Adams was a Patrol Section supervisor at the Chambersburg station from October 2010 to June 2011. (*Id.*, at ¶ 11). Defendant Leidigh was the intake unit supervisor for the PSP Internal Affairs Division in September 2010. (*Id.*, at ¶ 12). Defendant Achey worked in the PSP Bureau of Human Resources in the Labor Relations Section, but now is retired. (*Id.*, at ¶ 13). Defendant Barbara Christie was the Chief Counsel for the PSP in September 2010. (*Id.*, at ¶ 14). Defendant Forray is a Senior Deputy Attorney General in the Pennsylvania Office of Attorney General's Criminal Division. (*Id.*, at ¶ 15). Finally, Defendant Hasenauer is a Special Agent with the Pennsylvania Office of Attorney General. (*Id.*, at ¶ 16).

In the summer of 2010, Fow and his fellow Union representative Eric Campbell filed two en masse grievances on behalf of the members of the PSP Chambersburg station pursuant to the Collective Bargaining Agreement. (*Id.*, at ¶¶ 27, 33). The two grievances, H-301 and H-302, are extremely similar and employ the same allegations simply directed at different supervisors. H-301 specifically targets behavior by Lauer and H-302 targets behavior by Grove. (Doc. 66, ex. 11, att. A, B). While the grievances include examples of the alleged behavior, both

include the following introductory paragraph, albeit with different names

supplanted:

> Members of the Chambersburg Station are being harassed up to and including this very date through the use of the schedule. This harassment is a direct result of those certain members engaging in, or attempting to engage in, protected activities including utilizing the Chain of Command, utilizing the PSTA for representation, utilizing the grievance procedure, and representing members during the above protected activities. In addition, the Chambersburg Command Staff, specifically Lt Wade LAUER, is imposing discipline upon members without due process, is using the schedule for reward and punishment, and is taking punitive and disciplinary actions against members prior to the completion of appropriate investigations by BIPS. Lt. LAUER is actively engaging in this conduct through decisions and actions of his own, and is passively engaging in this conduct by permitting subordinates to engage in the same conduct, specifically Patrol Sgt. James GROVE.

> (Doc. 66, ex. 11, att. A).

On September 29, 2010, Fow was acting in a supervisory capacity at the PSP

Chambersburg station and received notice of an incident of a mentally unstable

individual making threats over the phone. (Doc. 79, p. 10). Other troopers

responded to the call while Fow remained at the station, but Fow proceeded to the

location after one trooper pressed the panic button on his radio and could be heard

yelling for help. (*Id.*). Upon arriving to the scene, Fow observed Christopher

Broadwater seated in the backseat of a patrol vehicle. (*Id.*). The vehicle had a

Mobile Video Recorder ("MVR") directed toward Broadwater. (Doc. 65, ¶ 38).

Fow observed Broadwater attempting to escape either his handcuffs or his seatbelt and warned Broadwater to stop trying to get out of his handcuffs. (*Id*. at ¶¶ 39-40). Several minutes later, Fow was talking with an off duty police officer when the officer stopped talking mid-sentence to say, "He's out of the cuffs." (*Id*., at ¶¶41-42). Acting upon the assumption that Broadwater was escaping, Fow opened the patrol vehicle and shot pepper spray into his face, delivered a chest strike to him and took him to the ground. (*Id*., at ¶¶ 43-46). Broadwater was transported to the hospital for treatment. (*Id*., at ¶ 48).

When an officer with PSP uses less than lethal force and medical attention is required, the force is reported to Internal Affairs. (*Id*., at ¶ 55). In keeping with this policy, Fow self-reported his use of force to Internal Affairs following the incident with Broadwater. (*Id*., at ¶ 56). The parties disagree with how the investigation moved forward from this point. Fow alleges that Kane, Grove and Adams circumvented his superior Lauer and went to Leidigh at Internal Affairs to lobby for criminal charges. (Doc. 81, ¶ 53). The Court notes, however, that in support of this, Fow cites to a specific portion of deposition testimony that in no way supports this contention.[1] (*Id*.). Defendants, on the other hand, state that Kane asked Lauer to view the MVR because he felt there were inconsistencies between Fow's

---

[1] After conclusively stating that Grove, Adams, and Kane circumvented regulations to make assertions against him, Fow cites to Trooper Hockenberry's testimony regarding what he witnessed of the incident with Fow and Broadwater. The Court further notes that Fow's response to Defendants' statement of material facts is littered with conclusory allegations without evidentiary support.

summary of the incident and what was captured on the video. (Doc. 65, ¶¶ 52, 53). Both parties agree that after Internal Affairs received the MVR and conducted interviews, the investigation was referred to Agent Hasenhauer with the Office of Attorney General. (*Id*., at ¶¶ 59-61).

Fow was ultimately charged with Simple Assault and Official Oppression. (*Id*., at ¶ 64). The charges were filed by Agent Hasenhauer with the approval of Senior Deputy Attorney General Anthony Forray. (*Id*., at ¶ 63). Defendants state that the decision to prosecute Fow was made by Forray, (*Id*., at ¶ 62), but Fow contends that "the Defendants have the final authority on whether to prosecute one of their own" and that the "DA and the Attorney General did what the PSP requested." (Doc. 81, ¶ 62). Fow was suspended without pay during the pendency of his criminal charges from October 11, 2011 until April 5, 2012. (Doc. 65, ¶ 67). The magisterial district judge dismissed the charge of Official Oppression and a jury found Fow not guilty of Simple Assault. (*Id*., at ¶¶ 68-69).

On October 13, 2010, prior to the filing of criminal charges, Fow was transferred to the Gettysburg station, placed on restricted duty, and issued a Restricted Duty Order. ("RDO") (*Id*., at ¶¶ 70-73). Defendants Horgas and Lisa Christie determined that this transfer and RDO was appropriate.[2] (*Id*., at ¶ 73). The

---

[2] The Court notes that Fow has denied paragraph 73 of Defendants' statement of material facts. However, in his denial, it is clear that Fow agrees that Lisa Christie and Horgas made this decision and Fow is disputing the inferences and motivations behind that decision. (Doc. 81, ¶ 73).

RDO contained a "no contact" provision that prohibited Fow from having any

contact, personal or professional, with members of the Chambersburg station.

(Doc. 66, ex. 16, p. 170). While he was stationed at Gettysburg, Fow was no longer

the union representative for the members of the Chambersburg station, but was not

prohibited from acting in that capacity at Gettysburg.[3] (Doc. 65, ¶¶ 83-84).

Fow filed nine grievances against PSP from the time he received the RDO

until his retirement. (*Id*., at ¶¶ 85-94). Pursuant to arbitration awards or settlements,

Fow was reimbursed for all of his legal fees and costs, his 25-day suspension was

rescinded, he was awarded back pay, his leave and seniority were restored, and

received payment for mileage to the Gettysburg station. (*Id*.).

Fow brings eight counts against the Defendants. Counts I, II, III[4], IV, V, VI,

and VII are brought under 42 U.S.C. 1983 and Count VIII is a state law claim.

Count I is a claim of First Amendment retaliation against Pawlowski, Noonan,

Kane, Adams, Grove, Leidigh, Horgas, Lisa Christie and Barbara Christie. Count

II is a claim of First Amendment expressive association against Pawlowski, Lisa

---

[3] Fow denies paragraph 84 of the Defendants' statement of material facts, but does not offer evidence in support of his denial, and rather argues inferences. (Doc. 81, ¶ 84). The Court therefore treats paragraph 84 as admitted.

[4] Defendants noted in their brief that Count III is stated as a "malicious abuse of process" claim, seemingly coupling a federal malicious prosecution claim with state law abuse of process. (Doc. 67, p. 24) (*See also*, Doc. 26, p. 58). Fow did not address this concern in his brief in opposition. Rather, Fow discussed Count III in light of a federal malicious prosecution claim. (Doc. 79, p. 50). In light of this, we will consider Fow's claim as a federal malicious prosecution claim. Therefore, both Defendants' and Fow's references to the "state law claims" are understood by the Court to mean only Count VIII for intentional infliction of emotional distress.

Christie and Horgas. Count III is a claim of federal malicious prosecution against Lisa Christie, Forray, and Hasenhauer. Count IV is a claim of procedural due process against Kane, Grove, Adams, Lisa Christie, Barbara Christie, Leidigh, Achey, Bivens and Gray. Count V is a claim of civil rights conspiracy against Kane, Grove, Adams, Lisa Christie, Leidigh, Achey, Forray, Barbara Christie, Hasenhauer and Gray. Count VI is a claim of equal protection for selective enforcement against Pawlowski, Noonan, Leidigh and Lisa Christie. Count VII is a claim of equal protection against Pawlowski, Noonan, Leidigh and Lisa Christie under the class of one theory. Finally, Count VIII is a claim of intentional infliction of emotional distress against all defendants.

Due to the number of defendants, the Defendants include in their statement of material facts how a few of the individuals are involved in the events giving rise to Fow's action. (*Id.*, at ¶¶ 98-115). Pawlowski and Noonan were named in the lawsuit because they were each Commissioners of the PSP for a portion of time when Fow was placed on restricted duty. (*Id.*, at ¶¶ 100, 104). Bivens was the Deputy Commissioner of Operations when Fow was placed on restricted duty, and according to Fow, he was named in the lawsuit because "Bivens was duty bound to stay on top of discipline matters to aid the Commissioner in his adjudication." (Doc. 81, ¶ 108). Chief Counsel Barbara Christie was named in the lawsuit because of her denial of Fow's request for reimbursement of legal fees. (Doc. 65, ¶ 109).

Fow indicates that the "grievance process defeated her retaliatory actions" in this regard. (Doc. 81, ¶ 109).

Fow's claims against Lisa Christie arise from "her actions and inactions in her capacity as the PSP Disciplinary Officer." (Doc. 65, ¶ 21). Finally, Fow's claims against Agent Hasenhauer and Senior Deputy Attorney General Forray stem from their actions and inactions in their professional capacities relating to the criminal charges brought against Fow. (*Id*., at ¶¶ 112-115).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial.  *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III.   DISCUSSION

Fow brings seven federal claims based on alleged constitutional violations and one state law based claim. As a threshold matter, we will address Defendants'

argument that Defendants Noonan and Pawlowski lack the requisite personal involvement with any of the federal claims against them. We will then discuss each federal claim in turn. Next, we will address the state law claim together in light of Defendants' argument that it is barred by sovereign immunity. Finally, we will address Defendants' argument that all claims are barred by qualified immunity.

### A. Noonan and Pawlowski Personal Involvement

Fow brings federal claims against Noonan and Pawlowski in Counts I, VI, and VII, another federal claim against Pawlowski in Count II, and a state law claim against both in Count VIII. Each claim arises out of Fow's Restricted Duty Order and transfer to the PSP Chambersburg station. The federal claims raise constitutional violations, brought pursuant to 42 U.S.C. § 1983. Defendants argue for summary judgment in their favor because Fow has not produced evidence to show the requisite personal involvement of Noonan or Pawlowski to attach liability under § 1983.

Defendants are correct in noting that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The required personal involvement may be evidenced "where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them." *Festa v. Jordan*, 803 F. Supp.

2d 319, 325 (M.D. Pa. 2011) (Caputo, J.). Actual knowledge may be inferred from circumstantial evidence, while "[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997).

Fow admits in his response to the Defendants' statement of material facts that Noonan and Pawlowski were named in this lawsuit because each was the Commissioner of the PSP at a time while Fow was subject to the restricted duty order. (Doc. 81, ¶¶ 100, 104). In response to the Defendants' argument that Noonan and Pawlowski lack the requisite personal involvement for liability, Fow claims that "the evidence of record in this case shows the personal involvement of both of these Defendants in the harm Plaintiff suffered." (Doc. 79, p. 32). Curiously, Fow does not cite to the record *at all* for support of this assertion. (*See id*, pp. 32-37). In fact, the only record cite in Fow's entire argument on this point is to his own statement of material facts regarding the behavior of Defendant Horgas. (*Id*., at p. 34). There has been no citation to any evidence of Noonan or Pawlowski's actions in this case.

Fow's claims of personal involvement by Noonan and Pawlowski rely simply on the averment that "[i]t was their duty to review and decide the outcome"

of the restricted duty order. Both Noonan and Pawlowski have submitted declarations where they freely admit that their role as Commissioner involved oversight of all members; however, each makes clear that he "had no role in making the decision to place Corporal Fow on restricted duty" and relied on subordinates to handle the issue. (Doc. 66, ex. 2, ¶ 6) (*See also* Doc. 66, ex. 3, ¶ 6). They go on to state explicitly that they had no involvement with the criminal investigation of Fow, the decision to prosecute him, or the adjudication of the internal affairs investigation. (*Id*., at ex. 2, ¶¶ 7-11) (*Id*., at ex. 3, ¶¶ 7-10). Noonan stated that he "possibly" may have been "briefed on after-the-fact occurrences," but "had no involvement in the discipline process regarding Corporal Fow." (*Id*., at ex. 3, ¶ 11).

Fow has not offered any evidence to rebut the Defendants' declarations, relying on the assumption that "they were the final decision makers." (Doc. 79, p. 35). Fow states that "[t]heir decisions were informed as a result of their duty to review, which they admitted to in this case." (*Id*.). Noonan and Pawlowski did admit in their declarations that they exercise oversight over all members, but have specifically declared that they played no role in the disciplinary actions at issue. While Fow may believe that "[I]t is simply incredulous that they would not follow, approve, supervise, then review and decide events when a PSP Trooper was

charged with a crime and put in front of a jury," he has offered no direct or circumstantial evidence to establish that reality. (*Id*.).

The Third Circuit has made clear that "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. When faced with declarations of the Defendants denying their involvement, Fow cannot rely solely on a general assumption that the Commissioner was personally involved with the restricted duty order because he was at the top of the chain of command. Because Fow has offered no evidence in support of his § 1983 claims against Noonan and Pawlowski, no reasonable jury could find them liable for wrongdoing.

Therefore, we shall grant summary judgment in favor of Defendants Noonan and Pawlowski on all federal claims raised through § 1983, namely Counts I, II, VI, and VII.

## B. Count I- First Amendment Retaliation against Kane, Adams, Grove, Leidigh, Horgas, Lisa Christie and Barbara Christie

In Count I, Fow claims that he suffered retaliation in violation of the First Amendment from the above Defendants in response to his filing of the two en masse grievances. (Doc. 26, ¶225). In order to prevail on a First Amendment retaliation claim, a plaintiff must show "1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally

protected conduct and the retaliatory action." *Thomas v. Independence Twp*., 463 F.3d 285, 296 (3d Cir.2006).

Defendants offer two arguments in favor of summary judgment. First, Defendants argue that Fow cannot prevail on his First Amendment retaliation claim because filing the two grievances does not qualify as constitutionally protected conduct. Second, Defendants argue that Fow has not produced evidence to establish that his union activities and two grievances were substantial factors in his restricted duty status. Each argument will be considered in turn.

### i.   Protected Activity

For purposes of a First Amendment retaliation claim, a "public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "The question of whether or not speech is protected by the First Amendment constitutes a question of law." *Munroe v. Cent. Bucks Sch. Dist*., 805 F.3d 454, 466 (3d Cir. 2015).

The first inquiry is whether Fow was speaking as a citizen when he filed the two en masse grievances. The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Defendants argue that Fow was speaking pursuant to his official duties as a supervisor by bringing complaints up the chain of command. (Doc. 67, p. 16). Defendants point to Fow's deposition where he testified that he felt it was his "job to look out for the people who were below" him. (*Id.*) (quoting Doc. 66, ex. 10, 48:3-4).  Fow, on the other hand, contends that he spoke in an expressive fashion pursuant to his association with the Union rather than in response to any official duty as a corporal. (Doc. 79, p. 41).

Whether a public employee speaks as a citizen and whether the speech relates to a matter of public concern are often issues discussed in tandem because the two go hand in hand. However, where a court can easily discern that the plaintiff's speech was made as part of his official duties, it is easy to hold that he did not speak as a citizen and therefore receives no First Amendment protection. *See, e.g., Hill*, 455 F.3d at 242. For example, in *Hill*, a public employee brought a claim for First Amendment retaliation based on reports he made about his superior's conduct. *Id*. In the complaint, the public employee stated that he made

these reports "*as part of his duties as Manager.*" *Id.* (emphasis in original).

Because of that admission, the Court easily found that his retaliation claim must

fail because he was not speaking as a citizen. *Id.*

Fow makes a similar admission in his deposition testimony. (*See* Doc. 66,

ex. 10). Fow was asked to describe his role in conflict mitigation specifically

within his role as corporal, not as a union representative. (*Id.*, at 45:14-15). As part

of his response, Fow stated:

> And I felt it was my job to look out for the people who were
> below me. I never led from the back pointing my finger. I
> always led from the front. Tried to set the example. So when
> my people had problems, I never wanted them to direct those
> problems themselves. I always wanted them to come to me and
> I would tell them too damn bad, you don't have a bitch, and you
> have to just live with it, or I would tell them yes, it sounds
> reasonable and I will take it further up the chain from here, you
> don't need to argue with the sergeant or with the lieutenant
> about whatever your particular issue is.

(*Id.*, at 48:2-14). While Fow did not explicitly state that he filed the

grievances at issue pursuant to his duties like the public employee in *Hill* did,

Fow's testimony illustrates that he viewed his duties as corporal to encompass

bringing complaints from the department up the chain of command. This belies

Fow's argument that the en masse grievances were not "within his official duties as

a police officer." (Doc. 79, p. 41). Fow stresses that he "had no official 'duty' to

file masse grievances nor to otherwise speak out on mal-administration within the

PSP," but regardless of whether that was a technical duty within his job description as corporal, his testimony makes clear that he viewed it to be part of his job. (*Id*.).

Fow's testimony suggests that he did not speak as a citizen when he filed the en masse grievances, such that we could summarily find that his retaliation claim must fail. However, in the interests of caution and completeness, we will accept Fow's contention that filing the en masse grievances was not pursuant to his duty as corporal because his claim fails regardless. To be afforded protection under the First Amendment, a public employee's speech must also be of public concern. The Supreme Court has defined when speech is of public concern in the context of the First Amendment in *Snyder v. Phelps*, 5623 U.S. 443 (2011):

> "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."

*Id*., at 453 (internal quotations omitted). This inquiry calls upon courts to examine "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). Personal grievances cannot constitute speech of public concern. *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994). Further, "speech that relates solely to mundane employment grievances does not implicate a matter of public concern." *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015).

Defendants argue that the two en masse grievances were not speech of public concern because they "were merely the collective gripes of the station members at Chambersburg Station regarding how the members were being treated by two of their commanding officers, Lauer and Grove." (Doc. 67, p. 18). Fow, on the other hand, characterizes the grievances as "not simply grievances that related to individualized terms and conditions of employment, but were grievances that related to the larger problem of retaliation for engaging in these types of grievances." (Doc. 79, p. 43). Fow argues that these grievances were premised on the problem that "troopers were being forced into situations that compromised the level of service to the public that could only be remedied by equitably applying police services, and that the safety of the public was coincidental with officer safety, both of which were being placed at risk." (*Id.*).

Looking to the "content, form, and context" of the grievances, we find that they do not qualify as speech of public concern. *Connick*, 461 U.S. at 147. Starting with the content, we note that the grievances themselves concern instances in which members of the Chambersburg station were harassed by two specific superiors. (*See* Doc. 66, att. A, B). The grievances allege that Defendants Lauer and Grove harassed certain members of the station through the use of the schedule, demeaning statements, and other similar actions. (*Id.*). It is clear that the Chambersburg members "were not speaking as public citizens when they filed

grievances with their union, but rather as employees voicing private concerns regarding how they were treated by their employer." *Gwynn v. City of Philadelphia*, 866 F. Supp. 2d 473, 481 (E.D. Pa. 2012), aff'd, 719 F.3d 295 (3d Cir. 2013). While "in one sense the public may always be interested in how government officers are performing their duties," that does not transform an employee's issue with his supervisors into a matter of public concern. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 399 (2011).

To be sure, the grievances attempt to convert the specific issues with Lauer and Grove into a public problem by stating that their actions have "had a negative effect on station moral, productivity, and cohesiveness." (Doc. 66, att. A, p. 9). Fow argues that the grievances concern "the effective functioning of statewide police services." (Doc. 79, p. 43). However, the reality is that the two grievances concern explicit instances of alleged misconduct by two superiors at one PSP station, not the functioning of the PSP in general. They did not raise matters of public concern, but rather represented the private employment complaints of Chambersburg members.

The form and context lend credence to the conclusion that there was not a matter of public concern as well. The speech at issue took the form of an en masse employee grievance filed with the PSP union. As the Supreme Court recognized, "[a] petition filed with an employer using an internal grievance procedure in many

cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Duryea*, 564 U.S.at 398. There is no evidence that these en masse grievances sought to communicate an issue beyond the problems with Lauer and Grove. Fow testified that his goal in filing the grievances was "[g]etting the problems at the Chambersburg station fixed." (Doc. 66, ex. 10, 93:7-9). To agree with Fow and find that these grievances constituted matters of public concern would allow plaintiffs to "transform everyday employment disputes into matters for constitutional litigation in the federal courts." *Duryea*, 564 U.S. at 399.

Accordingly, we hold that Fow did not engage in protected activity under the First Amendment and will grant summary judgment in Defendants' favor on the claim of retaliation.

### ii.    Substantial Factor

Because we find that Fow did not engage in constitutionally protected speech for purposes of First Amendment retaliation, we do not reach Defendants' causation arguments.

### C. Count II- First Amendment Expressive Association against Lisa Christie and Horgas

Fow claims that his First Amendment expressive association freedoms were abridged when he was transferred from the Chambersburg station and issued the RDO to not have contact with the members of that station. (Doc. 79, p. 48). He

claims that his transfer and the RDO "prevented Fow from being involved in pursuing [the en masse grievances he filed]." (*Id.*). Defendants argue that summary judgment should be granted in their favor because the union's ability to advocate its viewpoints was not significantly impacted by Fow's transfer and RDO. (Doc. 67, p. 23). In response, Fow makes clear that he is claiming that his individual expressive association rights were violated by the Defendants through the prevention of him advocating for the en masse grievances at the Chambersburg station and that he is not asserting claims on behalf of the union. (Doc. 79, p. 48).

Fow claims that "there is abundant evidence upon which these issues should go to a jury." (*Id.*). Ironically, he does not cite to the record at all in support of his expressive association claim. Neither does he cite to any case law to present the elements for which an individual must show to prevail on a claim that he was denied expressive association rights under the First Amendment. Indeed, in most instances it is the right of the expressive group that is allegedly infringed upon by state action.

The Supreme Court has "recognized a First Amendment right to associate for the purpose of speaking, which [it has] termed a 'right of expressive association.'" *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 68 (2006) (quoting *Boy Scouts of America v. Dale*, 530 U.S. 640, 644 (2000)). Defendants have not argued that participation in the union does not qualify as

expressive association, nor would an argument to that effect be successful. Instead, Defendants point out that "Fow was not stripped of his union membership, but instead performed station representative duties at his newly assigned station" and "was able to continue his union association and exercise his contract-based rights to the grievance process." (Doc. 86, pp. 15-16). Thus, Defendants argue that the evidence does not illustrate an infringement upon Fow's expressive association rights at all. (*Id.*).

We agree with Defendants. Fow has not provided any evidence of record to demonstrate that his right to expressive association was infringed by the Defendants. Fow maintained his role as a representative for the union upon his transfer, and was more than able to participate in the grievance procedure, evidenced by his multiple personal grievances filed after his transfer. (Doc. 65, ¶¶ 85-94). He was clearly still an active member of the union. Fow has failed to present evidence to controvert the Defendants' motion, relying on conclusory arguments and sweeping assertions. It is long settled law that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Because Fow has failed to demonstrate how his expressive association rights were infringed by the Defendants' actions, we shall grant summary judgment in Defendants' favor on Count II.

### D. Count III- Malicious Prosecution against Lisa Christie, Forray and Hasenhauer

As noted earlier, Fow's complaint does not make clear whether he is bringing a claim of federal malicious prosecution pursuant to § 1983 or a state law claim of abuse of process. (*See* Doc. 26, p. 58). However, Fow addresses Count III in terms of a federal malicious prosecution claim and the Fourth Amendment, suggesting that Count III is in fact a federal malicious prosecution claim brought pursuant to § 1983, and we will treat it as such. (*See* Doc. 79, pp. 49-50).

In order to prevail on a § 1983 malicious prosecution claim, a plaintiff must show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

Defendants put forth several arguments in favor of summary judgment. First, Defendants argue that Fow's malicious prosecution claim must fail against Defendant Lisa Christie because she did not initiate a criminal proceeding against him. (Doc. 67, p. 25). Second, Defendants argue that Defendant Forray is entitled to prosecutorial immunity on this claim. (*Id*., at p. 26). Third, Defendants argue that the final three elements of the malicious prosecution claim are not met. (*Id*., at

pp. 27-31). We will address each argument in turn. At the outset, we note that Fow has failed to provide a single citation to the record in support of his arguments against summary judgment on Count III.

Defendants argue that Lisa Christie cannot be held liable for malicious prosecution because she did not initiate a criminal proceeding against Fow. (*Id.*, at p. 25). Defendants cite to Hasenhauer's deposition and the criminal complaint to show that the criminal charges against Fow were filed by Hasenhauer with Forray's approval. (*Id.*). Fow does not address this argument in his brief in opposition. In fact, his only mention to Lisa Christie is a conclusory statement that she participated and facilitated in creating a "hatefully hostile work environment for the Plaintiff." (Doc. 79, p. 52). Because Fow has not offered any evidence to support a finding for Lisa Christie's involvement, the first element of a malicious prosecution claim cannot be met. Accordingly, we shall grant summary judgment in Lisa Christie's favor on Count III.

Defendants next argue that Forray is entitled to prosecutorial immunity. The Supreme Court has specifically stated, "[w]e hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [section] 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Perhaps in light of this binding precedent, Fow does not address

Forray's claim of prosecutorial immunity at all in his brief in opposition.

Accordingly, we shall grant summary judgment in Forray's favor on Count III.

This leaves Hasenhauer as the only defendant in Count III. While

Defendants acknowledge that the first two elements of malicious prosecution are

met because Hasenhauer initiated a criminal proceeding against Fow and the

proceeding ended in Fow's favor, they argue that Fow cannot establish the

remaining three elements. (Doc. 67, pp. 27-31). Specifically, Defendants argue

that: 1) the criminal proceeding against Fow was initiated with probable cause; 2)

the Defendants did not act maliciously or for a purpose other than bringing Fow to

justice; and 3) Fow's arrest alone does not constitute a Fourth Amendment seizure.

(*Id.*).

Fow opposes each of these arguments. As to probable cause, Fow simply

states that he "alleges that the criminal charges against him were initiated without

probable cause." (Doc. 79, p. 51). He makes no citation or mention of the charge

itself, the elements of the charge, or the factual circumstances surrounding it.

Instead, he argues that the charges were influenced by PSP's motivation to silence

him as a union representative. (*Id.*). While this argument may be relevant to the

second element concerning the defendant's purpose, whether probable cause

existed at the time of arrest is a fact driven inquiry that asks the Court to look at the

totality of the circumstances. *Johnson v. Campbell*, 332 F.3d, 199, 211 (3d Cir.

2003). Fow's argument is devoid of any references to the record or specific facts. Instead, he relies on his conclusory allegation that there was not probable cause to arrest him. The criminal complaint, on the other hand, cites to the fact that Fow never checked Broadwater's handcuffs, Broadwater was speaking calmly when Fow pepper sprayed him, and the video seemed to depict that a strike check was not necessary. (Doc. 67, p. 28) (Doc. 66, ex. 15).

The Third Circuit instructs that probable cause in a § 1983 action is one for the jury unless, after examining the evidence submitted by the plaintiff and resolving all inferences in his favor, a reasonable jury could not find a lack of probable cause. *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998). Here, the Plaintiff has not cited to any evidence for us to consider on the issue of probable cause. Fow has presented only conclusory allegation of the Defendants' improper motives instead of citing to the facts of the Broadwater incident to attack probable cause. The criminal complaint cites to numerous facts to show probable cause, and without an argument attacking their validity, no reasonable jury could find that the criminal complaint lacked probable cause. Accordingly, Fow's malicious prosecution claim must fail.

We note for purposes of completeness that Fow's claim would fail even if we left probable cause to be determined by the jury. The final element of a malicious prosecution claim is that "the plaintiff suffered deprivation of liberty

consistent with the concept of seizure as a consequence of a legal proceeding."
*Johnson*, 477 F.3d at 82. This seizure must rise to the level of a Fourth
Amendment seizure to satisfy the elements of malicious prosecution. *Torres v.
McLaughlin*, 163 F.3d 169, 175 (3d Cir. 1998). In his brief in opposition, Fow
points to the following as satisfaction of this element:

> "Lastly, the PSP used their power and authority over the terms and
> conditions of Plaintiff's day-to-day work environment to see that he
> was deprived of the opportunity to defend himself when off-duty or
> call himself a police officer and forced to travel many miles
> unreimbursed to a distant place of employment every day knowing
> this would stress his family. Later he was denied a litany of financial
> and personal rights to which he was entitled. He was denied legal fees
> for his criminal and civil matter defenses. These conditions are
> onerous and amount to severe limitations on his liberty consistent with
> an act of seizure."

(Doc. 79, p. 53). Fow fundamentally misunderstands what constitutes
a seizure. A seizure within the Fourth Amendment is a "meaningful
interference, however brief, with an individual's freedom of movement."
*Torres v. McLaughlin*, 163 F.3d 169, 175 (3d Cir. 1998). Fow's transfer to
another station in no way amounts to a Fourth Amendment seizure; if that
were the case, nearly every public employee transfer could trigger a § 1983
claim. Fow was free to move about, just not to a specific work station.
Further, it is important to note that Fow's list of "seizures" was not brought
about as a consequence of the legal proceeding, but as a consequence of the
internal affairs investigation into the Broadwater incident.

28

Fow has failed to adduce evidence to support the elements of a federal malicious prosecution claim. As such, we shall grant summary judgment in favor of all Defendants on Count III.

### E. Count IV- Procedural Due Process against Kane, Grove, Adams, Lisa Christie, Barbara Christie, Leidigh, Achey, Bivens and Gray

In his third amended complaint, Fow alleges that the above named Defendants deprived him of his procedural due process rights by "failing to properly investigate" Fow's interaction with Broadwater, failing to follow PSP guidelines in their investigation, "provid[ing] false or incomplete testimony or information in administrative hearings or other proceedings" and the criminal matter, and failing to provide Fow with "adequate notice and opportunity to provide his side of the story or otherwise defend himself". (Doc. 26, ¶¶ 243). Defendants argue that summary judgment is warranted in their favor for two reasons. Defendants argue that the first four complaints of the Defendants' behavior do not implicate Fow's procedural due process rights and that the evidence makes clear that Fow was afforded adequate notice and opportunity to be heard. (Doc. 67 pp. 32-33).

Once again, Fow does not cite to the record at all in his response to Defendants' arguments for summary judgment on Count IV. (*See* Doc. 79, pp. 53-55). Instead, he offers three pages of conclusory allegations, posed in a narrative style of what Fow "realized," "knew", or "learned." (*Id.*, at p. 53). He cites to but

one case in support of his argument, yet the purpose for which the citation is made is unclear.[5] (*Id.*, at p. 55).

When faced with a motion for summary judgment, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" to allow for the possibility that a rational jury would find in their favor. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561(1992). While Fow has provided no citations to the record to point the Court to facts that would make out his claim for a deprivation of procedural due process, Defendants have cited to the record for each of the nine grievances filed by Fow to show that the process afforded him adequate notice and an opportunity to be heard. (Doc. 67, pp. 33-36). For every grievance filed by Fow, he either was represented by counsel at a hearing and able to present evidence before a hearing examiner who decided his complaint or settled the grievance with the Defendants. (*Id.*). This grievance procedure, clearly utilized by Fow, demonstrates that Fow received adequate notice and an opportunity to be heard on his objections with the Defendants, and

---

[5] The Court notes that Fow cited to *Hill v. Borough of Kutztown*, 455 F.3d, 225, 233-234 (3d Cir. 2006). Fow cites to the portion wherein the court affirmed the District Court's holding the plaintiff failed to state a claim for a deprivation of procedural due process because he could not show a property interest in his government job. While the court did go on to find that there may have been a procedural due process claim because of a loss of reputation, the only mention of the loss of reputation Fow has  made is two one-line mentions in in his third amended complaint. (Doc. 26, ¶¶ 242(d), 217). Thus, not only is it unclear why Fow has cited to this case, but it actually points the Court to find against him on this matter.

Fow has not provided the Court with any evidence to suggest this was not the case.

As such, we must grant summary judgment in Defendants' favor on Count IV.

### F. Count V- Civil Rights Conspiracy against Kane, Grove, Adams, Lisa Christie, Leidigh, Achey, Forray, Barbara Christie, Hasenhauer and Gray

In Count V, Fow alleges that the above Defendants participated in a civil

conspiracy to deprive him deprive him of his rights by "silenc[ing] Fow as an

effective Union Delegate" in order to "ensure that public attention was deflected

away from the manner in which PSP troopers are trained in using force by

criminally investigating and prosecuting Fow for actions he was taught and trained

in by the PSP." (Doc. 26, ¶ 248). Defendants move for summary judgment for

three reasons: first, Defendants argue Fow cannot show a conspiracy between

governmental agents because they are considered to be one under *Land v. City of

Bethlehem*, 457 Fed. App'z 188, 193 (3d Cir. 2012). (Doc. 67, p. 37). Second,

Defendants argue that Fow cannot maintain a civil conspiracy claim because there

has been no underlying constitutional violation. (Doc. 67, p. 37). Finally,

Defendants argue that Fow has no evidence to prove a conspiracy. (*Id*., at p. 38).

Fow's response yet again fails to include a single citation to the record. His

arguments suffer from the same flaw as Count IV in that they comprise wholly

conclusory allegations with no citation to evidentiary support. (*See* Doc. 79, 56-

60). While Fow recognizes that a civil conspiracy can be shown through

circumstantial evidence (*Id.*, at p. 57), he does not include any reference to such evidence. As the non-moving party, Fow has a duty to "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Fow has not fulfilled this duty. Without any record support, no reasonable jury could infer the existence of a civil conspiracy. Fow's belief that the Defendants conspired to violate his rights is insufficient to support his claim. As such, we need not delve in to Defendants' legal arguments because Count V fails due to the complete lack of a factual foundation. Accordingly, we shall grant summary judgment on Count V.

### G. Counts VI and VII- Equal Protection against Leidigh and Lisa Christie

Fow claims that Leidigh and Lisa Christie denied him equal protection of the law in both Counts VI and VII. Count VI specifies that it is a claim of equal protection under a selective enforcement theory and is premised on Fow's allegation that Leidigh and Lisa Christie "selectively treated" him due to "an intention to punish or inhibit the exercise of a constitutional right, Fow's freedom of expression as a Union Representative to raise matters of public concern in union grievances." (Doc. 26, ¶¶ 250-251). He does not identify which law he was denied protection under, nor does he identify membership in a protected class. Count VII specifies that it is a claim of equal protection under a "class of one" theory and is premised on Fow's allegation that the RDO was overly broad and Fow acted in a

way consistent with PSP regulations such that no criminal investigation or prosecution were warranted. (*Id.*, at ¶ 255).

Defendants move for summary judgment on both counts. Because Fow does not advance in Count VI that he was part of a protected class, Defendants assume that Fow is bringing his action under a "class of one" theory like in Count VII. (Doc. 67, p. 39). The Court notes that we view Fow's complaint in this way as well. To make out a claim of equal protection, a plaintiff must generally specify that he is a member of an identifiable group. *Engquist  v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008). However, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Id*. Because Fow has made no claim of membership in a protected class, we assume both claims are premised on his membership in a class of one. Defendants argue that both Counts must fail because the Supreme Court held that a class of one equal protection claim does not apply in the public employment context under *Engquist*. (Doc. 67, p. 39).

Fow responds by arguing that the "Defendants' retaliation and interference with the rights of expressive association enjoyed by Fow were not in the

'employment context' i.e., it was not a personal grievance."[6] (Doc. 79, p. 60). He goes on to say the "record is clear that Fow was clearly not acting as an employee but as a citizen." (*Id.*, at p. 61).

> The Supreme Court clearly stated in *Engquist*:
>
> The question in this case is whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class. We hold that such a "class-of-one" theory of equal protection has no place in the public employment context.

553 U.S., at 594. Following suit, the Third Circuit held that *Engquist* foreclosed a class of one theory of equal protection for a PSP officer in *Skrutski v. Marut*, 288 Fed. App'x. 803 (3d Cir. 2008). There, a PSP officer claimed retaliation and deprivation of equal protection of the law when he was transferred to a different station as a result of him reporting instances of inappropriate conduct by fellow PSP officers. *Id.*, at 805. The Court quickly disposed of his equal protection claim, finding that "[t]his legal avenue is now clearly foreclosed by the Supreme Court's recent decision that such claims are not cognizable in the public employment context." *Id.*, at 809.

Fow's argument that his claims are not within the public employment context defies logic and the clear text of his third amended complaint. Both

---

[6] The Court notes that Fow may have inadvertently stated "it was not a personal grievance" because his argument rests on the premise that it was personal rather than employment related.

Counts VI and VII include language that Fow "was treated differently from other similarly situated PSP troopers." (Doc. 26, ¶ 254) (*See also id.*, at ¶ 250). His equal protection claim is therefore explicitly premised on his treatment within his public employment, much like the PSP officer in *Skrutski*. Thus, *Engquist* and *Skrutski* specifically foreclose Fow's equal protection claims and summary judgment shall be granted on Counts VI and VII.

### H. Count VIII- Intentional Infliction of Emotional Distress against All Defendants

Count VIII is a state law claim against all Defendants for intentional infliction of emotional distress. (Doc. 26, p. 65). Defendants argue that this claim is barred by either sovereign or qualified immunity, and in the alternative, the Court should decline to exercise supplemental jurisdiction over the state claims. Fow encourages the Court to exercise supplemental jurisdiction and argues that the Defendants are not entitled to either sovereign or qualified immunity. We shall continue to exercise supplemental jurisdiction over Count VIII pursuant to 28 U.S.C. § 1367(a) and will discuss each immunity defense in turn.

#### a.  Sovereign Immunity

Pennsylvania's sovereign immunity statute, codified at 42 Pa.C.S. § 8521, operates as absolute protection from liability for intentional tort claims for an employee of the Commonwealth "acting within the scope of his or her employment

duties." *Holt v. Nw. Pennsylvania Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997). While there are nine exceptions to this general rule of immunity, *see* 42 Pa.C.S. § 8522, neither party advances an argument that an exception applies to intentional infliction of emotional distress. Whether Fow's claims are barred by sovereign immunity, therefore, depends on whether the actions that make up his intentional infliction of emotional distress claim were within the Defendants' scope of employment. Defendants argue that they were for two reasons: first, by bringing this action pursuant to § 1983, Defendants argue Fow has tacitly admitted that each Defendant was acting in their official capacity. (Doc. 67, p. 43). Second, Defendants argue that all of the actions complained of in this matter occurred within the employment context. (*Id.*).

To prevail on a claim of intentional infliction of emotional distress in Pennsylvania, four elements must be met: "(1) extreme and outrageous conduct, (2) which is intentional or reckless; (3) it must cause emotional distress, and (4) that distress must be severe." *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 927 (M.D. Pa. 2015) (Mannion, J.), aff'd, 2016 WL 6837148 (3d Cir. Nov. 21, 2016). At the outset, we note that Fow's claim does not make clear exactly which actions by each defendant make up his claim of intentional infliction of emotional distress. Without a clear identification of the actions at issue in this claim, it is

difficult to decide whether the action occurred within the scope of the Defendants' employment for purposes of sovereign immunity.

Fow has made the determination of whether Defendants Pawlowski, Noonan, Lisa Christie, Hasenhauer and Forray were acting in their official capacities clear through his response to Defendants' statement of material facts. (Doc. 81). Fow admitted that Pawlowski and Noonan were named in this lawsuit because of their employment as Commissioner of the PSP at relevant times. (*Id.*, at ¶¶ 100, 104). He similarly admitted that his claims against Lisa Christie "stem from her actions and inactions in her capacity as the PSP Disciplinary Officer and not as a member of the general public." (*Id.*, at ¶ 110). He made the same admission in regards to Hasenhauer's capacity as an investigator for the Attorney General's Office and Forray's capacity as an attorney for the Attorney General's Office. (*Id.*, at ¶¶ 12, 115). Fow has admitted that these Defendants' actions in this matter stem from their official capacities, and thus they are entitled to sovereign immunity.

Fow did not make an explicit admission for Defendants Bivens, Horgas, Barbara Christie, Lauer, Kane, Grove, Leidigh, Achey, Gray and Adams. However, in his third amended complaint, Fow specifically states that each of these defendants with the exception of Achey and Gray "is an employer for the purposes of this action and is individually liable for Plaintiff's damages." (Doc. 26,

¶¶ 7, 9, 10, 11, 12, 13, 14, 15). Fow therefore brought this action against these defendants in their official capacity as employers for PSP and sovereign immunity applies to claims against them as well.

This leaves Achey and Gray as the only Defendants not specifically designated to be acting in their official capacity for purposes of this litigation. Despite these being the only defendants not admitted to be acting pursuant to their employment, we can look at the entire claim and all Defendants and easily hold that all actions giving rise to a potential claim of intentional infliction of emotional distress arise within the scope of employment. An action is within the scope of employment if it is the kind of action the employee is hired to perform, it occurs within the authorized time and space limits of employment, and is actuated at least partially to serve the employer. *Johnson v. Townsend*, 314 F. App'x 436, 440 (3d Cir. 2008). The actions complained of by Fow, while argued to be done in furtherance of an improper motive, were still typical employment actions. The actions at issue include internally investigating an officer, transferring the officer to another station, issuing a restricted duty order, and filing criminal charges. These are all actions taken in furtherance of employment, even if the motivation behind them was impure. *See Schell v. Guth*, 88 A.3d 1054, 1068-9 (Pa. Cmwlth. 2014).

Fow argues that this cannot be possible because "[n]o one can credibly argue that the PSP authorizes the willful misapplication of its regulations to harm a fellow employee for lawfully exercising his rights." (Doc. 79, p. 64). Fow misunderstands what it means for something to be done "within the scope of employment." If it were only possible to act within the scope of employment when following all rules and regulations, there would never be liability for a tort because every tort would fall outside of the rules. Even willful misconduct by an employee does not remove an action from the scope of employment. *Holt v. Nw. Pennsylvania Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997). When acting pursuant to their official capacity, Commonwealth employees enjoy sovereign immunity, and all actions giving rise to this case occurred within the scope of employment. *Id*. As such, we shall grant summary judgment in the Defendants' favor on Count VIII.[7]

### b.  Qualified Immunity

Because we have found that summary judgment is appropriate in Defendants' favor on other grounds, we need not reach the defense of qualified immunity.

### IV.   CONCLUSION

---

[7] While the Defendants do not raise an evidentiary insufficiency argument with respect to Count VIII, the Court notes that, due to the vagueness of Fow's intentional infliction of emotional distress claim, and the high bar at which extreme and outrageous conduct is judged, Count VIII would fail even if sovereign immunity did not apply.

For the foregoing reasons, we shall grant Defendants' motion for summary judgment. (Doc. 64). A separate order shall issue in accordance with this ruling.